

# THE ATTORNEY GENERAL
## OF TEXAS

April 22, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Dudley Harrison
Chairman
Committee on Agriculture and
    Livestock
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78769

Opinion No. JM-683

Re: Authority to conduct animal
damage control activities

Dear Representative Harrison:

In your inquiry, you pose the following question:

> Is the law creating the Texas Rodent and
> Predatory Animal Control Service, under the
> cooperative agreement with the Federal government
> and the Texas A & M University System, the only
> authority needed to conduct animal damage control
> activities in the state and [are any] additional
> permits needed from the state to conduct animal
> damage control?

Article 192(b), V.T.C.S., Cooperation between state and federal
agencies in control of predatory animals and rodents, provides in
pertinent part:

### State to cooperate

> Section 1. The State of Texas will cooperate
> through The Texas A & M University System with the
> appropriate officers and agencies of the United
> States in the control of coyotes, mountain lions,
> bobcats, the Russian boar, and other predatory
> animals and in the control of prairie dogs, pocket
> gophers, jack rabbits, ground squirrels, rats and
> other rodent pests for the protection of livestock,
> food and feed supplies, crops and ranges.

> . . . .

### Cooperative agreement

> Sec. 5. The Director of Extension of the System is hereby authorized and directed to execute a cooperative agreement with the appropriate officers or agencies of the United States for carrying out such cooperative work in predatory animal and rodent control in such manner and under such regulations as may be stated in such agreement.
>
> . . . .

> ### Construction with other laws
>
> Sec. 10. The provisions, restrictions and penalties of Section 72.005, Parks and Wildlife Code, shall not be construed as applying to hunters and trappers under this Act, provided they are acting in performance of duties contemplated under the terms of this Act.

You direct our attention to 7 U.S.C.A., section 426, which provides:

> The Secretary of Agriculture is authorized and directed to conduct such investigations, experiments, and tests as he may deem necessary in order to determine, demonstrate, and promulgate the best methods of eradication, suppression, or bringing under control on national forests and other areas of the public domain as well as on State, Territory, or privately owned lands of mountain lions, wolves, coyotes, bobcats, prairie dogs, gophers, ground squirrels, jack rabbits, and other animals injurious to agriculture, horticulture, forestry, animal husbandry, wild game animals, fur-bearing animals, and birds, and for the protection of stock and other domestic animals through the suppression of rabies and tularemia in predatory or other wild animals; and to conduct campaigns for the destruction or control of such animals: _Provided_, That in carrying out the provisions of this section the Secretary of Agriculture may cooperate with States, individuals, and public and private agencies, organizations, and institutions.

The circumstances which give rise to your question are stated by you as follows:

A question has been raised concerning the animal damage control program under the Texas Rodent and Predatory Animal Control Service. Is there a need for this program to obtain a permit from the Texas Parks and Wildlife Department to conduct its animal damage control activities?

Under the Parks and Wildlife Code there are provisions for permits for scientific, zoological, and propagation purposes (V.T.C.S. Parks and Wildlife Code, chapter 43, subchapter C) and permits to control protected species (chapter 43, subchapter H) which is for a private citizen experiencing damage to crops or domestic animals to get a permit from a county judge. Neither permit applies to the activities of the Rodent and Predatory Animal Control Service.

In Attorney General Opinion M-1265 (1972), it was concluded that "neither the Parks and Wildlife Commission nor any other State agency is authorized to issue licenses which would come within the exception provided in 16 U.S.C., section 742j-1(b)(1)." The section in question prohibits any person in an aircraft from shooting or attempting to shoot for the purpose of capturing or killing any bird, fish, or other animal. In addressing the matter of authority to grant a license under an exception to the prohibition, the following was stated in the opinion.

The above quoted federal statute does not authorize the Parks and Wildlife Commission or any other State agency to issue permits or licenses pursuant thereto. The statute does provide an exception whereby it '. . . shall not apply to any person if such person . . . is operating under a license or permit of, any State . . . to administer or protect or aid in the administration, or protection of land, water, wildlife, livestock, domesticated animals, human life, or crops . . .' However, there is no authority vested in any State agency to issue permits or licenses under this exception. Such authority must come from the Legislature.

While Article 192b, Vernon's Civil Statutes, does authorize cooperation with the United States Department of the Interior by the State acting through the Agricultural and Mechanical College System of Texas in the control of certain predatory

animals, it does not create a licensing procedure as contemplated by the federal Act.

The situation you describe is different from the situation addressed in Opinion M-1265. In that case, the legislature had not enacted legislation necessary for persons to come within the exception allowed by the federal statute. In this case, the legislature has enacted article 192(b) in response to 7 U.S.C.A., section 426.

The legislature, in section 5 of article 192(b) authorized and directed the Director of the Extension System to

> execute a cooperative agreement with the appropriate officers or agencies of the United States for carrying out such cooperative work in predatory animal and rodent control in such manner and under such regulations as may be stated in such agreement. (Emphasis supplied).

While a copy of such agreement was not furnished us, we will presume that such an agreement exists since the Director of the Extension System was authorized and directed to execute one with the appropriate officials of the United States. Since we have not been furnished with a copy of the agreement, we will presume that the provisions thereof are not in conflict with any state or federal law. The language contained in article 192(b) reflects the legislature's intention that such agreement set forth the manner in which the program for predatory and rodent control should be conducted and the rules and regulations necessary for its operation. It is our opinion that the legislature intended that the program promulgated as the result of the agreement would be sufficiently inclusive to provide for the only authority needed to conduct predatory animal and rodent control in this state. Thus, the authority for the operation of the program stems from such agreement.

## S U M M A R Y

The legislature, in enacting article 192(b), V.T.C.S., intended that the program for predatory animal and rodent control to be promulgated as the result of an agreement between the director of the Extension System of Texas A&M University and appropriate United States officials be sufficiently inclusive to provide the only authority needed for the operation of such program.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General